Filed 6/23/25  Leondis v. PayPal CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAUL LEONDIS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>PAYPAL, INC.,<br><br>     Defendant and Respondent. | A170987<br><br>(Alameda County<br>Super. Ct. No. RG21090434) |

After plaintiff Paul Leondis was unable to access a payment of $1,073 sent to him via PayPal, Leondis sued PayPal for conversion; breach of the implied covenant of good faith and fair dealing; breach of the implied duty to act with reasonable care; breach of fiduciary duty; negligence; and violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.; UCL).  PayPal eventually moved for summary judgment, which the trial court granted.  Leondis, appearing in propria persona, challenges the judgment on numerous grounds.  While Leondis was clearly frustrated by his experience with PayPal, he has failed to demonstrate any prejudicial error by the trial court.  Many of his arguments on appeal were either not properly preserved in the trial court and thus have been forfeited or have been waived on appeal due to deficiencies in his appellate briefing, most notably the lack of developed legal analysis and/or failure to provide adequate record

1

citations.  We affirm.

## PRELIMINARY CONSIDERATIONS

Before discussing Leondis's claims of error, we find it necessary to stress "[p]erhaps the most fundamental rule of appellate law"—i.e., "that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)  " 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his [or her] claim.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619.)  Rather, " '[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.  Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.]  Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 (*Champir*).)  This is no less true when we are exercising our de novo review over an order granting summary judgment.  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief."]; see *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [the problem caused by inadequate citations to the record is "especially acute" when an appeal is taken from a summary judgment].)

Leondis's briefing suffers from these deficiencies.  While Leondis's unrepresented status may explain these shortcomings, it does not excuse them.  (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262,

2

1267 [" ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney" ' "].)  Those representing themselves are afforded no additional leniency or immunity from the rules of appellate procedure simply because of their propria persona status.  (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

As a second consideration before we proceed to Leondis's claims of error, we point out that our factual discussion is largely based on the declaration of Steve Tarvin filed in support of PayPal's summary judgment motion.  In the trial court, Leondis objected to Tarvin's declaration in his responses to PayPal's separate statement on grounds of hearsay, lack of foundation, and violation of Code of Civil Procedure, section 437c, subdivision (d).  He also asserted the declaration contradicted previous testimony and was, at times, conclusory.  The trial court did not consider Leondis's evidentiary objections; specifically, because it found them procedurally deficient for failure to comply with California Rules of Court, rule 3.1354(a).  That rule states:  "Unless otherwise excused by the court on a showing of good cause, all written objections to evidence in support of or in opposition to a motion for summary judgment or summary adjudication must be served and filed at the same time as the objecting party's opposition or reply papers are served and filed."

In his appellate briefing, Leondis asserts the trial court improperly refused to hear his objection, made during the summary judgment hearing, that the Tarvin declaration was improperly made on information and belief.  It is true that evidentiary objections may be raised in the trial court at the hearing on summary judgment (Code Civ. Proc., § 437c, subd. (b)(5)), and if such objections are not directly addressed by the trial court, they are preserved on appeal.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531–532; see

3

Code Civ. Proc., § 473c, subd. (q).)  However, in his appellate briefing, Leondis provides no analysis as to why the court assertedly abused its discretion, citing only general legal tenets and making conclusory assertions. Accordingly, he has waived his evidentiary complaint.  Moreover, even if we were to consider his evidentiary argument, which we do not, we would find no prejudicial error.  Only one portion of one sentence of Tarvin's declaration was based on information and belief, and we have disregarded that part of that sentence.  The remainder of Tarvin's declaration is based on personal knowledge as a legal specialist in the executive escalations department at PayPal.  Given his position, Tarvin was "familiar with PayPal's User Agreement, account and transaction record systems and customer service channels."  Thus, there are no foundational issues in connection with his declaration, nor has there been any violation of Code of Civil Procedure section 437c, subdivision (d).

Other than the objections to the Tarvin declaration, Leondis's objections largely related to issues of whether and when his account was verified, which, as we discuss below, is not material *for purposes of this summary judgment.*

With these observations, we turn to Leondis's challenge to the trial court's grant of summary judgment.

## BACKGROUND

### PayPal and its History with Leondis

PayPal is an online platform used by individuals and businesses to send and receive money and to buy and sell things.  As a condition of using the platform, all users must agree to the terms of PayPal's user agreement. For security purposes, PayPal requires users to maintain a confirmed bank account attached to their PayPal account; such an account is considered a

4

"verified" account. When a confirmed bank account is removed, the PayPal account becomes "unverified," resulting in limitations on how the account can be used, including inability to claim a payment.

Leondis has had a PayPal account since September 2009. From December 8, 2009, through January 5, 2019, he maintained a verified PayPal account with a linked bank account. Leondis contacted PayPal on January 5; thereafter, his account became unverified. PayPal agents do not add or remove bank account information without the account holder's direction, authorization, or consent.

On January 10, Leondis used the PayPal platform to invoice J. Lanning in the amount of $1,073. However, he was unable to retrieve the funds sent by Lanning. PayPal subsequently informed Leondis he would need to claim the money manually because he was not a verified PayPal user and gave him some instructions on how to do so. It further stated that if Leondis did not claim the money by February 9, the transaction would be canceled and the money returned to Lanning.

Thereafter, on or about January 22—in response to customer service communications from Leondis regarding the failed transaction—PayPal provided him with a provisional credit of $1,073 while it investigated his claim. But it cautioned that if the claim was denied, "the provisional credit [would] be reversed and charged against [his] PayPal account."

On or about February 9, the transaction was cancelled, and the funds were returned to Lanning. PayPal suggested Leondis contact Lanning to agree on an alternate payment method. There is no indication in the record Leondis ever did so.

On February 12, Leondis linked a bank account to his PayPal account, and the account was restored to verified status.

PayPal subsequently notified Leondis the provisional credit would be reversed because it had rejected his claim and the funds at issue had been returned to Lanning. The credit was reversed on or about February 21.

Two years later, on February 19, 2021, Leondis filed the instant complaint against PayPal, alleging causes of action for conversion, breach of the implied covenant of good faith and fair dealing, breach of the implied duty to act with reasonable care, breach of fiduciary duty, negligence, and violation of the UCL.

### *Summary Judgment Motion*

PayPal filed its summary judgment motion in December 2022. It argued, among other things, that the bulk of Leondis's claims were barred by the terms of the user agreement, which, as we shall discuss, absolves PayPal from liability for any losses resulting from an inability to use its platform or a suspension or other action taken with respect to a user's account, including actions taken negligently. With respect to Leondis's tort claims, PayPal argued, among other things, that they were barred by the economic loss rule because Leondis's losses were solely economic in nature and arose in the context of a contractual agreement.

Leondis filed opposition, claiming the user agreement was either unlawful or unconscionable. He objected to the application of Delaware law; argued it was not clear PayPal's factual showing was sufficient to shift the burden of proof; raised numerous evidentiary objections to PayPal's showing; and claimed his own evidence contradicted PayPal's stated reason for freezing the payment and showed PayPal's instructions as to how to unfreeze the payment were contradictory and fraudulent. Leondis filed his own declaration in support, attaching a copy of his complaint and attesting all the factual allegations therein were true and correct and based on his personal

knowledge.  He also declared he had a reasonable expectation California law would apply and asked the trial court to take judicial notice of various California statutes, a California rule of court, California decisional law, and a 2002 federal case involving PayPal decided under California law.

Following a hearing, the trial court took the matter under submission and issued a written ruling on March 12, 2024.  The court concluded Delaware law applied pursuant to the choice-of-law provision in the user agreement and the parties' release of liability in that agreement was valid under such law, observing Leondis had not submitted any evidence to support his argument the agreement was unconscionable.  These rulings foreclosed Leondis's causes of action for negligence, breach of the implied covenant of good faith and fair dealing, breach of the implied duty to perform with reasonable care, breach of fiduciary duty, and conversion.  With respect to Leondis's remaining cause of action under the UCL, the court concluded the undisputed facts did not support a claim PayPal's conduct was unlawful, unfair, or fraudulent.

In making its ruling, the trial court did not consider the allegations of the complaint in determining whether a disputed material fact existed. Rather, it found Leondis's attempt to use his complaint to establish material facts "problematic" given that Code of Civil Procedure section 437c, subdivision (p)(2) expressly provides a "plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists."  (See *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7 ["It is generally understood . . . that a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context."].)

At oral argument in this court, Leondis maintained that, in addition to

the allegations of his complaint, he provided other evidence establishing disputed issues of material facts, precluding summary judgment. Leondis appeared to be referring to a screen shot purporting to show his account was verified as of January 14, 2019, and to comments made at the summary judgment hearing regarding when and how his account was verified. However, the only *record citations* he provides in his appellate briefing are to his complaint (or the copy of the complaint attached to his declaration) and the transcript of the trial court hearing. For this reason, alone, we cannot consider this supposed evidence. (See *Champir, supra*, 66 Cal.App.5th at p. 597.) Furthermore, this evidence, again, largely relates to issues of whether and when his account was verified, which, as we discuss below, is not *material* for purposes of this summary judgment.

## DISCUSSION

### *Summary Judgment*

" 'Summary judgment and summary adjudication provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (Code Civ. Proc., § 437c, subd. (f)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 . . . (*Aguilar*).) A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (f)(2), (p)(2); *Aguilar, . . .* at p. 849.) This showing must be supported by evidence, such as affidavits, declarations, admissions, interrogatory answers, depositions, and matters of which judicial notice may be taken.' " (*Rondon v. Hennessy Industries, Inc.* (2016) 247 Cal.App.4th 1367, 1373 (*Rondon*); Code Civ. Proc., § 437c,

8

subd. (p)(2); accord, *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587.)

"'After the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action or affirmative defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.) The plaintiff may not simply rely on the allegations of its pleadings but, instead, must set forth the specific facts showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar, . . .* at p. 850.)'" (*Rondon, supra*, 247 Cal.App.4th at pp. 1373–1374.)

"'In ruling on the motion, the trial court views the evidence and inferences therefrom in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 . . . (*Saelzler*).) If the trial court concludes the evidence or inferences raise a triable issue of material fact, it must deny the defendant's motion. (*Aguilar, . . .* at p. 843; *Saelzler, . . .* at p. 768.) But the trial court must grant the defendant's motion if the papers show there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)'" (*Rondon, supra*, 247 Cal.App.4th at p. 1374.)

"'"We review an order granting summary judgment or summary adjudication de novo. (*Aguilar, supra*, 25 Cal.4th at p. 860.) We independently examine the record to determine whether a triable issue of material fact exists. (*Saelzler, supra*, 25 Cal.4th at p. 767.) The trial court's

9

stated reasons for granting summary judgment or summary adjudication are not binding on us because we review its ruling, not its rationale." ' " (*Rondon*, *supra*, 247 Cal.App.4th at p. 1374.)

***Validity of PayPal User Agreement***

PayPal's standard user agreement contains a number of provisions relevant to these proceedings. For example, the agreement provides: "**PayPal's liability is limited with respect to your PayPal account and your use of PayPal services.** In no event shall PayPal be liable for lost profits or any special, incidental or consequential damages . . . arising out of or in connection with our websites, software, systems . . . operated by us or on our behalf, any of the PayPal services, or this user agreement (however arising, including negligence) unless and to the extent prohibited by law. [¶] Our liability to you or any third parties in any circumstances is limited to the actual amount of direct damages. In addition, to the extent permitted by applicable law, PayPal is not liable, and you agree not to hold PayPal responsible, for any damages or losses (including, but not limited to, loss of money, goodwill, or reputation, profits, or other intangible losses or any special, indirect, or consequential damages) resulting directly or indirectly from: (1) your use of, or inability to use, our websites . . . operated by us or on our behalf, or any of the PayPal services; . . . (6) a suspension or other action taken with respect to your PayPal account."

In addition, if a PayPal user receives "a payment for selling goods or services that is later refunded or invalidated for any reason, [that user is] responsible for the full amount of the payment sent to [the user] plus any fees." Moreover, "PayPal services are provided 'as-is' and without any representation or warranty, whether express, implied or statutory." (Boldface omitted.) And, as is particularly relevant here, "PayPal does not

10

guarantee continuous, uninterrupted or secure access to any part of the PayPal services." Indeed, PayPal retains "sole discretion" under the user agreement to place "limitations" on a user account that "prevent [the user] from completing certain actions . . . such as withdrawing, sending or receiving money." Finally, PayPal's relationship with the user "is as a payment service provider, and PayPal is an independent contractor for all purposes. PayPal is not your agent or trustee."

Leondis's arguments embrace two recurrent themes. He argues California law should govern this dispute despite the express choice-of-law language in the user agreement that Delaware law applies. And he asserts the user agreement is unconscionable under California law. Neither claim has merit.

Pursuant to the user agreement, PayPal users agree "that, except to the extent inconsistent with or preempted by federal law and except as otherwise stated in this user agreement, the laws of the State of Delaware, without regard to principles of conflict of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between [the user] and PayPal." "The interpretation of a choice of law clause on undisputed facts presents a purely legal question which we review de novo." (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 257.)

A choice of law provision chosen by the parties to govern their contractual rights and duties will be applied unless either: " '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the

11

determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.' " (*Nedloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465 (*Nedloyd*); accord, *Pitzer College v. Indian Harbor Ins. Co.* (2019) 8 Cal.5th 93, 100–101.)

PayPal's incorporation in Delaware establishes a substantial relationship between the state and the parties. (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1545–1546 (*Hambrecht & Quist*) ["the parties to a contract have a substantial relationship with the chosen state if one or more of them is incorporated there"].) Thus, Delaware law applies to this dispute unless it is contrary to a fundamental policy of California. (*Nedloyd, supra*, 3 Cal.4th at p. 465.) This was Leondis's burden to establish (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917), and he has failed to provide any reasoned analysis in support of his belief that California law should apply here.

Instead, he simply cites to various California statutes, asserting without analysis that they are applicable and defeat the parties' choice of Delaware law. Given the insubstantiality of his briefing, Leondis has waived the issue on appeal. But even were that not the case, there is no merit to his argument. It is true that Civil Code section 1646 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." However, this statute applies only in the *absence* of a contractual choice of law provision. (*Hambrecht & Quist, supra*, 38 Cal.App.4th at pp. 1540–1541.) Civil Code section 1668 states, in turn: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for [their] own fraud, or willful injury to the person or property of another, or violation of law,

12

whether willful or negligent, are against the policy of the law." However, as our Supreme Court recently clarified, the statute "does not preclude parties from limiting their liability for pure breaches of contract absent a violation of an independent duty that falls within the ambit of [Civil Code] section 1668. Where the claims asserted are 'nothing more than a breach of . . . contractual obligations,' [Civil Code] section 1668 does not apply. [Citation.] In such cases, releases are governed by contract principles such as unconscionability." (*New England Country Foods, LLC v. Vanlaw Food Products, Inc.* (2025) 17 Cal.5th 703, 717.) Here, Leondis has not advanced causes of action for fraud, willful misconduct, or violation of the law outside of his contractual relationship with PayPal, making Civil Code section 1668 inapposite.

Leondis also cites to Civil Code section 1667 for the proposition something is "unlawful" if it is "contrary to good morals" (italics omitted) and suggests the Delaware choice-of-law provision is "immoral" because he has no association with Delaware. But, as we have just recited, California law allows a contractual choice-of-law provision to designate the state of a party's incorporation. Leondis also urges the contract is contrary to good morals because it releases the dominant party from liability. However, our high court's recent decision in *New England Country Foods* makes clear California law allows the parties to limit liability for contractually based claims.

Leondis additionally argues the user agreement is unlawful because it contains a unilateral modification clause stating: "We may amend this user agreement at any time by posting a revised version on our website. The revised version will be effective at the time we post it. If we change the user agreement in a way that reduces your rights or increases your responsibilities, we will provide you with 30 days' prior notice by posting notice on the **Policy Updates** page of our website." He has not, however,

13

explained how this provision has any bearing whatsoever on the claims he presents here or any reasoned analysis as to why it is unlawful.

Finally, in both his briefing on appeal and at oral argument, Leondis appeared to argue that the user agreement is unconscionable under California law because it is a contract of adhesion. PayPal admitted at oral argument that the user agreement is adhesive in nature but, correctly, pointed out this does not necessarily make it unconscionable. The doctrine of unconscionability " ' "is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are '*unreasonably* favorable to the more powerful party.' " ' " (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 578, italics added (*Chen*).) Ordinary contracts of adhesion, which are regularly enforced, contain " ' "a degree of procedural unconscionability." ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244; see *Chen*, at p. 580 [agreeing with the trial court that any procedural unconscionability in PayPal's standard user agreement was "minimal"].) However, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. (*Chen,* at p. 578.) Substantive unconscionability focuses on whether contract terms are overly harsh or so one-sided as to shock the conscious. (*Ibid.*) Thus, " '[n]ot all one-sided contract provisions are unconscionable.' " (*Id.* at p. 579.) Indeed, " ' " 'a contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.' " ' " (*Ibid.)* In other words, asserting that a contract provision is adhesive is insufficient to establish its substantive unconscionability.

In sum, Leondis has presented no fundamental policy of California which precludes the application of Delaware law to the instant dispute.

Under Delaware law, a contractual release of liability must be clear and unequivocal, not unconscionable, and not against public policy. (*Ketler v. PFPA, LLC* (Del. 2016) 132 A.3d 746, 747–748 (*Ketler*).) The language of the user agreement is clear and unequivocal, and Leondis has advanced no argument the agreement is unconscionable under Delaware law. As for public policy, "[t]he public policy of [Delaware] is typically determined by the Delaware General Assembly" and "[n]o Delaware statute has been identified which bears on the validity of a release of prospective negligence." (*Id.* at p. 748.)

In other words, given the record, the trial court correctly concluded the PayPal user agreement at issue, including its limitation on PayPal's liability, is valid.

### The User Agreement Forecloses Leondis's Claims

That the user agreement is valid is fatal to the bulk of Leondis's claims. As we have recited, the agreement shields PayPal from liability for losses resulting from an inability to use any of the PayPal services or the suspension or other action taken with respect to a PayPal account, even when negligent. Leondis's claims all arise out of his inability to use PayPal's interface to retrieve the Lanning payment and PayPal's subsequent removal of the provisional credit following its investigation and rejection of Leondis's claim. Since PayPal retained "sole discretion" under the user agreement to place "limitations" on a user account that "prevent [the user] from completing certain actions . . . such as withdrawing, sending or receiving money," restricting Leondis from withdrawing the Lanning payment was authorized by the agreement. Its subsequent reversal of the provisional credit it

15

extended to Leondis was also authorized by the user agreement, and specifically by the provision stating if a PayPal user receives "a payment for selling goods or services that is later refunded or invalidated for any reason, [that user is] responsible for the full amount of the payment sent to [the user] plus any fees."

Since PayPal was authorized to act as it did under the user agreement, Leondis's causes of action alleging breaches of implied duties necessarily fail. (See *Kuroda v. SPJS Holdings, LLC* (Del. Ch. 2009) 971 A.2d 872, 888 [an "implied covenant cannot be invoked to override the express terms of the contract"].) Moreover, the user agreement expressly states that PayPal is not acting as an agent or trustee, making Leondis's breach of fiduciary claim meritless.

Leondis's tort claims for negligence and conversion also fail under Delaware's economic loss rule, which " 'is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged.' " (*Veriton Partners Master Fund, Ltd. v. Cornell* (Dist. Del. 2020) 2020 U.S. Dist. LEXIS 97323, p. *7.) In other words, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort. Here, Leondis's relationship with PayPal is solely a creation of contract. To say PayPal was negligent in its provision of services or somehow converted Leondis's property for its own use, is also to say it was in breach of contract. Accordingly, these tort claims are prohibited under Delaware law.

Finally, to succeed on his UCL claim, Leondis was required to establish PayPal engaged in unlawful, fraudulent, or unfair conduct. (Bus. & Prof. Code, § 17200.) The trial court concluded the undisputed evidence could not

16

support a finding PayPal engaged in any of the prescribed behaviors. While Leondis contends the trial court's rejection of his UCL claim was "frivolous," he supplies no reasoned argument why this is the case and therefore has waived the argument on appeal. Furthermore, to defeat summary judgment, disputed facts must be material. "To be 'material' for purposes of a summary judgment proceeding, a fact must relate to some claim or defense in issue under the pleadings, and it must also be essential to the judgment in some way." (*Riverside County Community. Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 653.) In his opposition memorandum, Leondis claimed PayPal made "numerous false and fraudulent statements" when he contacted the company in an attempt to unfreeze the Lanning payment, "some appearing to attempt to generate new business . . . under false pretenses." But these are not material facts; they are unsupported conclusions and conjecture. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850 [A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof.].) As for Leondis's assertion there are disputed issues of fact regarding when his account was verified and when it was not, the record is to the contrary. PayPal's evidence—based on company records—shows that Leondis's account was unverified from January 5 to February 12, 2019. That Leondis may have been able to withdraw a payment during that timeframe or view a computer screen at one point stating his account was verified speaks, at most, to inadvertence or mistake for which PayPal is not contractually liable and which is insufficient to support a claim under the UCL.

## DISPOSITION

The judgment is affirmed. The parties shall each bear their own costs

on appeal.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Langhorne Wilson, J.

A170987, Leondis v. PayPal